## STATE v. LESLIE D. CANTRELL.[1]

May 11, 1945.

No. 33,959.

[1]Reported in 18 N. W. (2d) 681.

14

*J. A. A. Burnquist,* Attorney General, *Ralph A. Stone,* Assistant Attorney General, *Michael J. Dillon,* County Attorney, and *Per M. Larson,* Assistant County Attorney, for the State.

*Elwood Fitchette,* for defendant.

JULIUS J. OLSON, JUSTICE.

By indictment, defendant was charged with the crime of manslaughter in the second degree. His motion for an order requiring the state to furnish a bill of particulars and specifications of the particular acts relied upon to sustain the charge was deemed necessary properly to prepare his defense, since, as he stated in his motion, "the offense set forth in the indictment is of a general nature and the charge set forth therein is in general terms." The motion was granted, and by the court's order the state was required to furnish defendant or his attorney with—

"a bill of particulars and specifications informing the defendant of the exact nature of the offense with which he is charged in the indictment * * *, which bill of particulars and specifications shall set forth the particular acts relied upon by the State * * * to sustain the charge set forth in the indictment," and by the order the bill of particulars so to be furnished was to become a part of the indictment "with like force and effect as if fully set forth at length therein."

Defendant was allowed five days after service of the bill to demur thereto, move to quash, or make "such other motions as may be

allowed by law." The bill of particulars was duly prepared and served. Defendant demurred to the indictment "and to the bill of particulars filed herein," assigning the following grounds:

"1. That the facts stated in said indictment and in said bill of particulars do not constitute a public offense:

"2. That said indictment does not substantially conform to the requirements" of Minn. St. 1941, §§ 628.10 to 628.13 (Mason St. 1927, §§ 10639 to 10642), as qualified by § 628.18 (§ 10647) thereof; and

"3. That more than one offense is charged in the indictment and that said joinder of offenses is not one allowed by statute."

The demurrer was overruled, but the court was of "opinion that certain questions of law have arisen which are so important and doubtful as to require the decision" of the supreme court; and, since defendant had requested and consented thereto, the court, pursuant to § 632.10 (§ 10756), certified the following questions, with a request that this court "answer the same":

"1. Could the facts stated in the indictment and bill of particulars, if proven, constitute the crime of manslaughter in the second degree as defined by Section 10078, subdivision 3, Mason's Minnesota Statutes 1927, the same being Section 619.18, subdivision 3, 1941 Minnesota Statutes, and/or Section 10080, Mason's Minnesota Statutes 1927, the same being Section 619.20, 1941 Minnesota Statutes?

"2. Does the indictment conform to the requirements of Sections 10639-10642, Mason's Minnesota Statutes 1927 (Section 628.10-628.13, 1941 Minnesota Statutes), as qualified by Section 10647 (628.18) thereof?

"3. Does the fact that the indictment and the bill of particulars set forth the ordinance of the city of Minneapolis constitute the setting forth in the indictment of two separate public offenses, contrary to law?"

In order intelligently to discuss the questions presented so that they may be properly understood, we deem it desirable to summarize the facts alleged.

Defendant was employed by the Fumigation Service Company. Its business (as its name suggests) was to fumigate buildings. On the occasion here involved, it used hydrocyanic gas. This is a deadly poison, and it was used on this occasion to fumigate a dwelling house in Minneapolis. Defendant's duty was to assist in this work and as a watchman to guard all entrances to the building until the fumigation process was entirely completed and to see that no person be permitted to enter until at least two hours after the fumigation was completed and the building had been opened for ventilation.

Defendant proceeded to perform his work and installed in the various rooms of the building equipment and material to permit the deadly fumes to generate and be diffused throughout the building. His employer had provided defendant with written instructions. These required that he comply with local regulations governing fumigation; that he notify the city police and fire departments of the hours of fumigation; that he refrain from fumigating any part of the building while anyone remained in any other part of it or in any part of adjacent or adjoining buildings to which the poisonous gas might penetrate; that all doors and accessible windows have warning signs placed thereon; that, when the building was ready for fumigation and before the gas was released, he see that all persons and animals were safely outside the building. To assure that no one should come in contact with this dangerous gas, the one in charge was instructed "to place a guard at the main entrance with orders to allow no one to enter" and to keep an alert guard on duty all during the time the building was under fumigation and until it had been opened and thoroughly ventilated. Not only were these duties imposed upon defendant by his employer, as to all of which he was fully cognizant, but the city's ordinance required that "a capable, alert watchman shall remain on duty guarding the entrances to the building * * * fumigated.

The watchman, as well as the operator, must remain on duty at least two (2) hours after building has been opened for ventilation." This ordinance is considered important by the state, since it is a local regulation governing fumigation jobs in that city.

On June 15, 1944, the job of fumigating the house here in question was duly begun at about 10:45 a. m. About noon of that day, Gerald Lindman, an eight-year-old boy, who had been accustomed to call at this place to accompany a little girl living there to and from school, had entered the building, the lock of the front door being so defective that it could not be properly locked. A nail or two had been used to fasten the screen door, but this contrivance was so inadequately fashioned as to permit this immature boy to open it and enter the building. He was at once stricken by the deadly gas and died shortly thereafter. Defendant was the man in charge as watchman and the only one then on the job. Yet he absented himself by going to a tavern some three and one-half blocks from the building in question, where he purchased a glass of beer. He next went to a drugstore and purchased cigars. During all this time the fumigated building was left totally unguarded. When he returned, the body of the boy had been removed. He was dead. The cause of death was the inhalation of hydrocyanic gas.

We shall consider the questions submitted by the trial court in the order given. First to be considered is the question whether the facts recited, if proved beyond a reasonable doubt, justify a conviction of manslaughter in the second degree.

■ Prior to adoption of our penal code, the common law as to crime was in force here except where abrogated or modified by statute. But, upon its adoption, all common-law offenses were abolished, and now no act or omission is criminal except as defined and prescribed by statute. While we have at times referred to common-law concepts, these have been limited strictly to aiding in the construction of common-law terms as used in such statute. 2 Dunnell, Dig. & Supp. § 2408, and cases cited under notes.

■ In the situation here recited, the offense charged was obviously within the legislature's power. It could, as we have shown,

declare what acts, deemed by it inimical to public welfare, should constitute a crime. Undoubtedly, it had the authority to define and prohibit the conduct of which defendant is accused. And it could impose appropriate punishment for such violation, whether it should be by defendant's act or failure to act where duty required action. Our duties are limited, of course, to a consideration of whether the enactment violates any constitutional rights of defendant. No suggestion, however, is made that any such rights have been violated or impaired by statute. *Id.* § 2407. One of our late cases is State v. Sobelman, 199 Minn. 232, 271 N. W. 484.

■ Counsel for the parties seem to be in accord that the following sections come into play. Minn. St. 1941, § 619.18 (Mason St. 1927, § 10078), provides:

"Such homicide is manslaughter in the second degree when committed without a design to effect death: * * *

* * * * *

"(3) *By any act,* procurement, *or culpable negligence of any person,* which, according to the provisions of this chapter, does not constitute the crime of murder in the first or second degree, nor manslaughter in the first degree." (Italics supplied.)

Section 619.20 (§ 10080) provides:

"*Every person who, by any act of negligence or misconduct in the business or employment in which he is engaged, or in the use or management of any* machinery, animals, or *property of any kind entrusted to his care or under his control, or by any unlawful, negligent, or reckless act* not specified by or coming within the provisions of any other statute, *occasions the death of a human being,* shall be guilty of manslaughter in the second degree." (Italics supplied.)

Section 610.02 (§ 9907), a section of the chapter entitled "General Provisions Relating to Crimes," provides:

"(1) * * * the words 'neglect,' 'negligence,' 'negligent,' and 'negligently' shall import a want of such attention to the nature or probable consequences of the act or omission as an ordinarily prudent man usually exercises in his own business;" and

"(4) The word 'knowingly' imports a knowledge that the facts exist which constitute the act or omission a crime, and does not require knowledge of its unlawfulness; * * *."

Section 619.27 (§ 10087) provides:

"Homicide is excusable when committed by accident or misfortune in doing any lawful act, by lawful means, with ordinary caution, and without any unlawful intent."

As we have seen, the provisions of both §§ 619.18 and 619.20 are founded upon defendant's negligence in given circumstances. His conduct, to be within that term as defined by § 610.02, would have to be measured by the conduct of the ordinarily prudent man when exercised by him in his own business and affairs. The indictment has stated all the facts upon which the state places its reliance for conviction. If the proof establishes the charge of the indictment to the effect that the front door was unlocked and that the screen door had but a nail or two insecurely fastening it, we think a jury could well find that this eight-year-old boy came within the protection of the act. Since defendant's voluntary departure from the premises was a breach of duty on his part owing by both him and his employer to this boy and others under the same circumstances, then there is ample room for a finding by the jury that such act on his part was *culpable* under the provisions of § 619.18, or that it was a *reckless act* under the provisions of § 619.20. Defendant knew that he was dealing with a volatile and highly lethal agency and that any person coming in contact with it was likely to suffer death. He knowingly undertook the job and agreed to perform it—unquestionably a highly important task. His failure securely to fasten the front door of the building and, worst of all, his wilful neglect to keep an alert guard on duty to see that no one entered the building until it had been thoroughly ventilated at least two hours could well be found to convict him not only of a *negligent act* but a *reckless* one as well, within the provisions of § 619.20. We think the indictment establishes that defendant had a duty to exercise due care, which in the circumstances amounted

to implicit obedience to the instructions to which we have referred; that the boy who lost his life came within the class of those to whom defendant owed this duty; that he failed to perform this duty; and that such failure resulted in the boy's death. Under either or both sections of the statute, if defendant's negligence in failing to exercise due care, as there defined, resulted in the boy's death, he is properly chargeable with manslaughter in the second degree.

Accordingly, we hold that the indictment properly charges defendant with the crime of manslaughter in the second degree, and therefore our answer to the first question is "yes."

The next question is whether the indictment meets the requirements of §§ 628.10 to 628.13 (§§ 10639 to 10642), as qualified by § 628.18 (§ 10647). These requirements are stated in § 628.10 as follows:

"(1) The title of the action, specifying the name of the court to which the indictment is presented, and the names of the parties;

"(2) A statement of the acts constituting the offense, in ordinary and concise language, without repetition."

And in § 628.12 as follows:

"The indictment shall be direct and certain as it regards:

"(1) The party charged;

"(2) The offense charged;

"(3) The particular circumstances of the offense charged, when they are necessary to constitute a complete offense."

Section 628.18 provides:

"The indictment shall be sufficient if it can be understood therefrom:

"(1) That it is entitled in a court having authority to receive it, though the name of the court is not accurately stated;

"(2) That it was found by a grand jury of the county in which the court was held;

"(3) That the defendant is named, * * *."

■ With these tests and requirements in mind, a careful reading of this indictment leads one to the conclusion that what counsel had in mind was the holding of this court in State v. MacDonald, 105 Minn. 251, 253, 117 N. W. 482, 483, where, after stating that the facts justifying the conclusion of negligence must be pleaded, we said:

"* * * It is true that there is the general allegation that the defendant acted wrongfully, unlawfully, recklessly, and with culpable negligence. *The indictment is, however, insufficient, unless the facts justifying such conclusion,* not the conclusion itself, *are particularly stated."* (Italics supplied.)

In this case there is and can be no doubt that the indictment fully and adequately sets forth all the facts upon which the crime is predicated. The pleader evidently adopted the form of indictment employed in People v. Smith, 56 Misc. 1, 105 N. Y. S. 1082. There, the court had before it a statute in substance almost identical with our own § 619.20. The statute was quoted by the court and may be found in 56 Misc. at p. 4, 105 N. Y. S. at p. 1084. Since the requirements of the New York statute were substantially the same as ours, we observe that there, as in the case before us, the indictment fully stated the facts upon which reliance was placed for conviction. That court held that the indictment sufficiently alleged that decedent's death was the immediate and direct consequence of defendant's acts and omissions. We note, too, that eminent counsel appeared in that case: De Lancey Nicoll and John P. Lindsay for defendant; William Travers Jerome for the state.

Another helpful case is State v. O'Brien, 32 N. J. L. 169, 171. In respect to an instruction by the trial court, the supreme court said:

"* * * The error complained of is, that the jury were instructed that a mere act of omission might be so criminal or culpable as to be the subject of an indictment for manslaughter. Such, we believe, is the prevailing current of authority. Professor Greenleaf,

in the third volume of his work on evidence, § 129, in treating of homicide, says: 'It may be laid down, that where one, by his negligence, has contributed to the death of another, he is responsible. The caution which the law requires in all these cases, is not the utmost degree which can possibly be used, but such reasonable care as is used in the like cases, and has been found, by long experience, to answer the end.' Wharton, in his Treatise on Criminal Law, p. 382, says: 'There are many cases in which death is the result of an occurrence, in itself unexpected, but which arose from negligence or inattention. How far in such cases the agent of such misfortune is to be held responsible, depends upon the inquiry, whether he was guilty of gross negligence at the time. Inferences of guilt are not to be drawn from remote causes, and the degree of caution requisite to bring the case within the limits of misadventure, must be proportioned to the probability of danger attending the act immediately conducive to the death.' The propositions so well stated by the eminent writers referred to, we believe to be entirely sound, and are applicable to the case before us."

Other helpful cases are Pallis v. State, 123 Ala. 12, 26 So. 339, 82 A. S. R. 106; State v. Behm, 72 Iowa 533, 34 N. W. 319; Gibson v. Commonwealth, 106 Ky. 360, 50 S. W. 532, 90 A. S. R. 230.

▪ The indictment is said to be infected with duplicity; in other words, the claim is that the challenged pleading has brought about a union of two incompatible offenses. In his brief defendant says: "From the indictment, how can defendant determine whether the State is proceeding under said Section 10078 [619.18] or under Section 10080 [619.20]?" His argument is that we have two separate statutes, each defining and setting forth acts or omissions, violation of either of which is punishable as manslaughter in the second degree. There are, however, no incompatible offenses involved here. Both sections deal with acts or omissions of personal duty resulting in the death of a human being, and for each the same punishment is imposed. Duplicity does not occur where the indictment charges an offense consisting

of various acts which are in fact to be construed as one continuous act or transaction. Here, the indictment charges a series of acts, all fully stated and all of them, whether taken separately or together, constituting the same offense. Under our decisions, such acts as are here pleaded may be charged in a single count. This is so for the simple reason that, notwithstanding each act may by itself constitute the offense, all of them do no more. They in fact constitute but one and the same offense. State v. Greenwood, 76 Minn. 207, 78 N. W. 1044, 1117. Our cases are cited in 3 Dunnell, Dig. & Supp. § 4405.

■ Since all the facts constituting the crime have been pleaded and no inconsistency appears therein, we conclude that the acts alleged were in fact continuous acts and omissions resulting in one offense, defined and punishable as manslaughter in the second degree, the only offense charged.

We find nothing therein likely to embarrass or make defendant's defense difficult to meet. He knows exactly what he has to meet. As we have said, the objection of duplicity does not apply when all the facts are pleaded and those facts constitute only one crime. 3 Dunnell, Dig. & Supp. § 4413, and cases there cited are helpful, as are also the following cases: State v. Hann, 73 Minn. 140, 76 N. W. 33; State v. Ekberg, 178 Minn. 437, 227 N. W. 497; State ex rel. Weich v. City of Red Wing, 175 Minn. 222, 220 N. W. 611; State v. Ostensoe, 181 Minn. 106, 231 N. W. 804.

We accordingly hold that the second question should be and is answered in the affirmative.

■ The third question is whether the indictment, which pleads the provisions of a Minneapolis ordinance and the charge of manslaughter under the state law, includes two separate public offenses.

We think it is perfectly clear that only one offense is charged and that that offense is one under the state law. The grand jury, of course, would have no jurisdiction to indict one for manslaughter under an ordinance. The provisions of the ordinance relate only to defendant's personal duties under the contract to fumigate this building. He joined with his employer in

seeking and obtaining authority from the city authorities to fumigate with hydrocyanic gas the particular premises involved. He was in full and exclusive charge of the job. His duties were prescribed. If his acts or omissions brought about the boy's death, he must meet the consequences as defined in and required by the state law. Defendant's employer was licensed to do this work pursuant to application. Defendant joined in the application, and it was granted. Only by virtue thereof could he proceed with the performance of the job so undertaken. Our answer to this question is "no."

The certified questions having been answered, we remand the case to the trial court for such further proceedings as are by law required.

So ordered.