STATE v. KEITH THOMAS MAYHOOD.
STATE v. DANIEL LEE CRISMAN.

241 N. W. 2d 803.

April 23, 1976—Nos. 46298, 46299.

260

*Warren Spannaus*, Attorney General, *Richard G. Mark*, Assistant Solicitor General, *Richard B. Allyn*, Assistant Attorney General, *Gary Hansen*, Special Assistant Attorney General, and *Helen Hill Blanz*, County Attorney, for appellant.

*C. Paul Jones*, State Public Defender, for respondents.

*Dwight J. Leatham* and *Randall D. B. Tigue*, for Minnesota Civil Liberties Union, amicus curiae, seeking affirmance as to these defendants with prospective abolition of immunity from prosecution for damage to property of a spouse.

PER CURIAM.

In these two cases, which we decide together, the state appeals from pretrial orders of the Itasca County District Court dismissing for lack of probable cause prosecutions against two separate defendants for the offense of intentional damage to property, Minn. St. 609.595, subd. 1(3).[1] In each case the property damaged was property owned by the defendant's wife.[2] In the Crisman case the parties apparently were not separated at the time, whereas in Mayhood the parties were separated but not under any judicial decree. The issue raised on appeal in both cases is whether the district court erred in holding that a person may not be prosecuted for the offense of criminal damage to property when the property damaged was that of the person's spouse. We

---

[1] Minn. St. 609.595, subd. 1(3), provides: "Whoever intentionally causes damage to physical property of another without the latter's consent may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $5,000, or both, if:

\* \* \* \* \*

(3) The damage reduces the value of the property by more than $100 measured by the cost of repair or replacement, whichever is less."

[2] Crisman allegedly removed the battery from his wife's automobile and threw it through the vehicle's windshield. Mayhood allegedly poured sand in the gas tank, radiator, power steering pump, battery, and carburetor of his wife's car and removed the wire leading from the distributor cap to the spark plugs.

dismiss both appeals on the ground that this court does not have jurisdiction.

Our conclusion that we do not have jurisdiction to hear the appeals is based on a different reason in Mayhood than in Crisman. In Mayhood, which was commenced before the Rules of Criminal Procedure became effective, we base the dismissal on our decision in City of St. Paul v. Landreville, 301 Minn. 43, 221 N. W. 2d 532 (1974). That case held that Minn. St. 632.11,[3] which gave the state a right to appeal in criminal cases in certain limited situations, was not intended to facilitate appeals from outright dismissals of cases for want of probable cause.

We reach the same conclusion concerning jurisdiction in Crisman. However, because that prosecution was commenced after the Rules of Criminal Procedure became effective (July 1, 1975), we base our conclusion in that case on Rule 29.03, subd. 1, which superseded the statute.[4] In Crisman (as in Mayhood) the court based the dismissal of the prosecution on a lack of probable cause

---

[3] Minn. St. 632.11, subd. 1, provides: "In criminal cases the state may appeal in the following instances:

(1) From an order, the substantive effect of which is to dismiss an indictment, information or complaint.

(2) From an order granting a motion to quash an arrest warrant or a search warrant.

(3) From an order granting the return of property or suppressing evidence, or suppressing a confession or admission, when accompanied by a statement as provided in section 632.12."

[4] Rule 29.03, subd. 1, provides: "The prosecuting authority may appeal to the Supreme Court:

1. in any felony or gross misdemeanor case, as of right, from any pretrial order of the district court, and

2. in any misdemeanor case, only with permission of the Supreme Court, any adverse decision of the district court acting pursuant to Rule 28.07, subd. 4, or any pretrial order of the district court upon a trial de novo.

except an order dismissing a complaint for lack of probable cause to believe the defendant has committed an offense or an order dismissing a complaint pursuant to Minn. Stat. § 631.21."

to believe that a crime had been committed. Therefore, under Rule 29.03, subd. 1, we do not have jurisdiction to hear the appeal in Crisman.

The trial court, in holding that there was no probable cause to believe that crimes had been committed, reasoned that the case of State v. Arnold, 182 Minn. 313, 235 N. W. 373 (1931), prevented prosecution of one spouse for malicious damage to the other spouse's property. We do not believe that Arnold controls.

In the Arnold case this court held, with two justices dissenting, that the larceny statute then in effect did not apply to a married woman who took property from her husband. In reaching this decision, this court started with the fact that at common law neither spouse could be prosecuted for larceny if he or she took the property of the other. The common-law rule was based on the fictional doctrine of the legal unity of spouses, a unity which it was felt would be undermined if the state could prosecute either of the spouses for theft from the other. There was an additional justification for the common-law protection from prosecution of the husband, a protection which arose from the husband's ownership and control of his wife's property. The court reasoned that the statute under which the wife was prosecuted and convicted did not change the common-law rule, so the question then became whether the Married Woman's Act had changed the common-law rule. That act stated that "every married woman shall receive the same protection of all her rights as a woman which her husband does as a man." G. S. 1923, § 8616 (now Minn. St. 519.01). This court interpreted the act as permitting the wife to sue in her own name to enforce rights affecting her property but not as having any effect on the common-law unity rule.

In discussing Arnold, the district court in our case stated as follows:

"* * * The decision is old in point of time and in view of the modern trend toward treating a woman's property as her own, it is questionable as to whether the present Minnesota Supreme

Court would follow State against Arnold. Nevertheless I have found no cases which have overruled or even modified Arnold, and as recently as 1948, a note in 32 Minnesota Law Review, beginning at page 288 indicates that Arnold is still the law of Minnesota."

We believe that Arnold is distinguishable. But this is something we need not decide here, because we are dealing with the crime of intentional destruction of property (commonly known as malicious damage or malicious mischief). This was apparently not a crime at common law,[5] and thus we do not have the common-law backdrop to the statute that the court in Arnold had. Further, we believe that intentional destruction of property is more akin to arson than to theft, and we have already held that the common-law unity rule has no application to arson. State v. Zemple, 196 Minn. 159, 264 N. W. 587 (1936). In any event, we do not believe it is this court's proper role to extend the unity doctrine and apply it to a new situation not already covered by any authority, that being a policy decision for the legislature.

We said, in City of St. Paul v. Landreville, 301 Minn. 43, 46, 221 N. W. 2d 532, 534, that—

"* * * [J]eopardy has not attached pursuant to the standards set forth in City of St. Paul v. Hurd [229 Minn. 51, 216 N. W. 2d 259 (1974)], and the prosecution cannot be held to be prohibited from commencing another action should circumstances dictate."

---

[5] Prior to the enactment of a penal code, the common law as to crime was in force in Minnesota except where abrogated or modified by statute. State v. Cantrell, 220 Minn. 13, 18, 18 N. W. 2d 681, 684 (1945). The Penal Code of 1885, effective January 1, 1886, abolished all common-law offenses. Penal Code of 1885, § 2. It is doubtful whether malicious mischief was a common-law crime in England, and although it was adopted as a common-law crime in some states, it appears that it was not a common-law crime in Minnesota. At least one can infer that from this court's decision in United States v. Gideon, 1 Minn. 226 (292) (1856). And that is how one commentator interprets the decision. Miller, Criminal Law, § 127, p. 400, note 64.

Should the prosecutor decide to exercise the discretion available in cases of this kind, it should be borne in mind that persons injured by acts that may be crimes can often obtain redress through civil actions. For many obvious reasons, the disposition of numerous family matters is better left to the "family court" rather than the "criminal court." The trial court stated it this way:

"I would further have to state in support of the Arnold rule that a complete abrogation of the rule could result in some other unusual situations which could, indeed, strike at the heart of the marriage relationship. It is seldom that husbands and wives do not have arguments which result in some minor destruction of the other's property, particularly in view of the law governing personal crimes as between spouses. One hundred dollars is not worth what it was at the time of Arnold either. And I would guess there could be numerous prosecutions for misdemeanor criminal damage to property if the Arnold case did not continue to be the law of the State of Minnesota."

Although the county attorney is free to bring these actions anew, we advise caution, for clearly not every incident of this nature should be the occasion for the institution of criminal proceedings. See, A. B. A. Standards for Criminal Justice, Standards Relating to the Prosecution and the Defense Function, Approved Draft, 1971, § 3.9, entitled "Discretion in the charging decision." [6]

Appeals dismissed.

---

[6] Section 3.9(b) declares that a prosecutor may "for good cause consistent with the public interest decline to prosecute, notwithstanding that evidence exists which would support a conviction." As the commentary points out, this standard is based upon a prosecutor giving "his greatest concern to those areas of criminal activity that pose a threat to the security and order of the community." See, also, Breitel, *Controls in Criminal Law Enforcement*, 27 U. of Chi. L. Rev. 427; Wright, *Duties of a Prosecutor*, 33 Conn. B. J. 293.