STATE of Minnesota, Respondent,

v.

Harold VERNON, Appellant.

STATE of Minnesota, Respondent,

v.

Jeffrey E. CARLSON, Appellant.

STATE of Minnesota, Respondent,

v.

Dennis Henry FINLAY, Appellant.

Nos. 48550, 48871, 48880 and 49788.

Supreme Court of Minnesota.

Aug. 3, 1979.

Rehearing Denied Oct. 5, 1979.

Kurzman & Mahanan, Marc G. Kurzman, and Ronald S. Goldser, Minneapolis, for Vernon and Carlson.

Ellis Olkon, Minneapolis, for Vernon.

Kurzman & Mahanan and Marc G. Kurzman, Minneapolis, for Finlay.

Warren Spannaus, Atty. Gen., St. Paul, for State in Nos. 48550, 48871, 48880.

Gary W. Flakne, County Atty., Vernon E. Bergstrom, Asst. County Atty., Chief, Appellate Section, and David W. Larson, Asst. County Atty., Minneapolis, for State in No. 48550.

William B. Randall, County Atty., and Steven C. DeCoster, Asst. County Atty., St. Paul, for State in Nos. 48871, 48880.

Thomas W. Foley, County Atty., and Steven C. DeCoster, Asst. County Atty., St. Paul, for State in No. 49788.

Heard before SHERAN, C. J., and WAHL and KENNEDY, JJ., and considered and decided by the court en banc.

CHARLES W. KENNEDY, Justice.*

These consolidated appeals challenge the constitutionality of the regulation of cocaine in the controlled substances law, Minn.St. c. 152.

Jeffrey E. Carlson was charged in Hennepin County with possession with intent to sell, and sale of cocaine in violation of Minn.St. 152.09, subd. 1(1). Harold Vernon was charged in Hennepin County with possession of cocaine in violation of Minn.St. 152.09, subd. 1(2). Their motions to dismiss were denied; the trial courts certified the question of constitutionality as important and doubtful; and they appeal.

Jeffrey E. Carlson and Dennis Finlay were convicted in separate proceedings in Ramsey County of possession with intent to distribute, and distribution of cocaine in violation of Minn.St. 152.09, subd. 1(1). They appeal from the Ramsey County judgments and from denial of their motions to dismiss.

Appellants contend that the degree to which cocaine is regulated is irrational, stating that: .

" * * * We are *not* arguing that the legislature lacks the police power to regulate use of cocaine. We *are* arguing that the degree to which it is regulated, by its classification as a narcotic, is completely lacking in reason. * * *

\* \* \* \* \* \*

---

* Acting as Justice of the Supreme Court by appointment pursuant to Minn.Const. art. 6, § 2, and Minn.St. 2.724, subd. 2.

"The questions * * * are whether classifying cocaine as a narcotic is rational and whether classifying cocaine in Schedule II is rational."

We agree with the trial courts that there is a rational basis for the legislation, and that the legislation offends neither equal protection, due process, nor privacy rights ensured by the United States and Minnesota constitutions; consequently, the orders and judgments are affirmed.

The evidence and the findings of the trial courts show that cocaine, a drug prepared from coca leaves, is a central nervous system stimulant; its short-term physiological effects include increase in heart rate and blood pressure, and pupil dilation; it lessens fatigue and hunger, produces euphoria, and can cause hyper-exciteability, insomnia, restlessness, and hallucinations, which are comparatively mild when compared with narcotic hallucinations, and which are considered by some to be pseudo-hallucinations which are non-psychotic. Prolonged use of cocaine can cause damage to membranes and psychological dependence with symptoms of depression and paranoia. It can be fatal when taken with narcotics, or injected into the blood, or ingested orally in large quantities.

Cocaine is not considered a narcotic pharmacologically because it is not related to opium and opiates, is not a depressant, does not produce tolerance or withdrawal syndrome, and is not physically addictive.

1. Minn.St. c. 152[1] prohibits traffic in and possession of controlled substances, § 152.09, subd. 1, and establishes five schedules of such substances, § 152.02, subd. 1. Substances listed in Schedule II include, inter alia, opium, opiates, coca leaves, "and any salt, compound, derivative, or preparation of coca leaves," and amphetamines. § 152.02, subd. 3.

Minn.St. 152.02, subd. 7(2), provides:

"The board of pharmacy shall place a substance in Schedule II if it finds that the substance has: A high potential for abuse, currently accepted medical use in the United States, or currently accepted medical use with severe restrictions, and that abuse may lead to severe psychological or physical dependence."

■ The objection to listing cocaine in Schedule II raises the question of whether there are facts which support the legislation. *United States v. Carolene Products Co.,* 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). The statutory listing of cocaine in Schedule II carries, by implication, legislative findings that it has a high potential for abuse, and that its abuse may lead to severe psychological dependence. In seeking a rational basis for the legislation, we must accept those findings in the absence of overwhelming evidence to the contrary. *Minn. State Bd. of Health v. City of Brainerd,* 308 Minn. 24, 241 N.W.2d 624 (1976).

There seems to be little dispute about the nature of the substance cocaine or, in general, the physiological and psychological effects of its abuse. It is not disputed that cocaine has currently accepted medical uses in the United States, or that, like most drugs, it has a potential for abuse and psychological habituation or dependence. There is testimony in the record that abuse may lead to psychological dependence. The dispute is about degrees—whether it has a high potential for abuse, or something less, and whether abuse may lead to severe psychological dependence, or something less. These are judgments for the legislature to make with the aid of the social and scientific expertise it can enlist. The evidence furnishes no reason to believe that the factual propensities of cocaine and the consequences of its abuse were not known to the legislature when the statute was enacted.

---

1. "In 1971, Minnesota adopted in large part the Uniform Controlled Substances Act. L.1971, c. 937. One of the major purposes of this act was 'to achieve uniformity between the laws of the several States and those of the Federal government.' 9 U.L.A. 146. This act, closely patterned after the Federal narcotic and dangerous drug law, 21 U.S.C.A. § 801, et seq., has now been adopted by 43 states. 11 M.S.A. 1977 Cumulative Annual Pocket Part, p. 162." *State v. King,* 257 N.W.2d 693, 695 (Minn.1977).

■ The record contains abundant uncontradicted expert testimony to the effect that cocaine is regulated too severely, and that its potential for abuse and harmful consequences of abuse is less than that of alcohol, amphetamines, the opiates, and tobacco. But that testimony does not undermine the legislation in a constitutional sense because it does not overwhelmingly refute the implied legislative judgments that cocaine has a high potential for abuse, that abuse may lead to severe psychological dependence, and that such consequences of cocaine abuse justify its regulation.

■ Appellants concede that the state has a legitimate interest in regulating cocaine. Regulation by placing cocaine in Schedule II, based on legislative findings that cocaine has a high potential for abuse and that such abuse may lead to severe psychological dependence, is rational. Prohibiting and providing criminal penalties for possession of cocaine, except for personal use "authorized by law," Minn.St. 152.09, subd. 1(2), advance the legitimate interest of the state in regulating the substance. The regulation bears a "rational relationship to a permissible state objective" so there is no denial of equal protection of the law, *State v. Vail,* 274 N.W.2d 127 (Minn. 1979), or of due process of law. The intrusion on the personal right to choose what to possess [2] is a necessary and reasonable way of advancing the state interest. There is therefore no unconstitutional intrusion on a right of privacy or personal autonomy. *Price v. Sheppard,* 307 Minn. 250, 239 N.W.2d 905 (1976); *Minnesota State Bd. of Health v. City of Brainerd, supra.*

■ 2. Though cocaine is not a narcotic by pharmacological standards, Minn.St. 152.01, subd. 10, defines "narcotic drug" as "any of the following:

"(1) Opium, coca leaves, and opiates;

"(2) A compound, manufacture, salt, derivative, or preparation of opium, coca leaves, or opiates; * * * ""

More severe penalties attach to violations with respect to narcotic drugs. Minn.St. 152.15. The federal statute contains the same definition, 21 U.S.C.A. § 802(16), and fixes more severe penalties to violations involving narcotic drugs. 21 U.S.C.A. § 960(b)(1). Federal appellate courts have held that the classification of cocaine as a narcotic is rational and constitutional. *United States v. Solow,* 574 F.2d 1318 (5 Cir. 1978); *United States v. Lane,* 574 F.2d 1019 (10 Cir. 1978); *United States v. McCormick,* 565 F.2d 286 (4 Cir. 1977); *United States v. Wheaton,* 557 F.2d 275 (1 Cir. 1977); *United States v. Harper,* 530 F.2d 828 (9 Cir. 1976).

■ The legislature has the authority to regulate cocaine to the same extent that it regulates opium and opiates. One way of accomplishing that is to classify them together as narcotic drugs, despite their pharmacological differences. Apparently, by pharmacological standards, cocaine should not be grouped with opium and opiates. But that does not affect the power of the legislature to group them together for purposes of prescribing the degree of regulation to be applied to the substance cocaine.

The orders and judgments are affirmed.

Affirmed.

2. See, generally, Tribe, *American Constitutional Law,* 905–910, 984–985 (1978).