**STATE of Minnesota, Appellant,**

v.

**Dean Scott AARSVOLD, Respondent.**

No. C1–85–1063.

Court of Appeals of Minnesota.

Nov. 12, 1985.

Review Denied Dec. 30, 1985.

Hubert H. Humphrey, III, State Atty. Gen., St. Paul, Raymond F. Schmitz, Olmsted Co. Atty., Rochester, for appellant.

Kevin A. Lund, Patterson-Restovich Law Offices, Ltd., Rochester, for respondent.

Heard, considered and decided by the court en banc, consisting of POPOVICH, C.J., and PARKER, WOZNIAK, HUSPENI, LESLIE, NIERENGARTEN, and RANDALL, JJ.

## OPINION

LESLIE, Judge.

The State of Minnesota appeals from a pretrial order of the district court dismissing for lack of probable cause a charge of felony murder in which the predicate felony was sale of cocaine. We affirm.

## FACTS

During the late evening of September 2, 1984, and the early morning of September 3, respondent was at a party with several people, including Craig Schweiger. At the request of Schweiger, respondent obtained and sold Schweiger a quantity of cocaine. Schweiger, respondent, and others administered to themselves a portion of the cocaine by injection. There was conflicting testimony during the grand jury proceedings as to whether respondent had assisted Schweiger with an injection. Soon after the injection, Schweiger collapsed and was taken to a nearby hospital where he was pronounced dead.

The amended indictment charges respondent with felonious sale of cocaine, felonious distribution of cocaine by injection, second-degree felony murder with distribution by injection as the predicate felony, and second-degree felony murder with sale of cocaine as the predicate felony.

Respondent moved to dismiss the charge of felony murder predicated on sale of cocaine. The trial court granted the motion.

## ISSUES

1. Is the pretrial order dismissing the felony-murder count for lack of probable cause an appealable order?

2. Is sale of cocaine a proper predicate felony upon which to base a charge of felony murder under Minn. Stat. § 609.-19(2)?

## ANALYSIS

### I

Minnesota Rule of Criminal Procedure 28.04, subd. 1, provides:

The prosecuting attorney may appeal as of right to the Court of Appeals:

(1) in any case, from any pretrial order of the trial court except an order dismissing a complaint for lack of probable cause to believe the defendant has committed an offense * * *.

The parties have not cited any cases construing this rule, nor has our research disclosed any. There are, however, numerous cases interpreting both Minn. Stat. § 632.-11 [1] and Minnesota Rule of Criminal Procedure 29.03, subd. 1,[2] which superceded Minn. Stat. § 632.11 in 1975 and is the predecessor of the current rule.

In *State v. Maki*, 291 Minn. 427, 192 N.W.2d 811 (1971), the supreme court, con-

---

1. Minn. Stat. § 632.11, subd. 1 (1978), provided in part: "In criminal cases the state may appeal in the following instances:

    (1) From an order, the substantive effect of which is to dismiss an indictment, information or complaint."

2. Minn. R. Crim. P. 29.03, subd. 1 (1976), provided in part: "The prosecuting authority may appeal to the Supreme Court:

    1. in any felony or gross misdemeanor case, as of right, from any pretrial order of the district court, * * * except an order dismissing a complaint for lack of probable cause to believe the defendant has committed an offense or an order dismissing a complaint pursuant to Minn. Stat. § 631.21."

struing Minn. Stat. § 632.11, stated that the prosecution has a right to appeal "where the order appealed from effectively defeats or prevents successful prosecutive action against the defendant." *Maki*, 291 Minn. at 428, 192 N.W.2d at 812. If the State could present the matter to another magistrate with some chance of success, then the order dismissing the complaint would not be appealable.

This interpretation continued under Minnesota Rule of Criminal Procedure 29.03. In *State v. Shaw*, 264 N.W.2d 397 (Minn. 1978), the State appealed from an order dismissing a complaint for lack of probable cause after the trial court suppressed a transcript of an interview with the defendant. The supreme court reasoned as follows:

> It thus appears that the prosecutor is not prevented from reissuing his complaint in slightly amended form, omitting the transcript of the interview but including references to the content of that interview as recalled by the investigator. Because of this, it is clear that appeal to this court will not lie from the order of dismissal. Rule 29.03, subd. 1, Rules of Criminal Procedure, provides that the state may appeal from any pretrial order except an order dismissing a complaint for lack of probable cause or an order dismissing a complaint pursuant to § 631.21 (which deals with dismissal of cases "in furtherance of justice"). The reason given by the comments for these exceptions to the general rule permitting appeal from pretrial orders is that they "represent situations in which the prosecuting authority does not need the right of appeal since it may reinstate its case by other means." Here it is clear that the prosecutor is free to reissue the complaint, and accordingly the appeal must be dismissed as from a nonappealable order.

*Shaw*, 264 N.W.2d at 398 (citation omitted).

This rationale was further applied in two DWI cases. In *State v. Wicks*, 258 N.W.2d 598 (Minn.1977), the trial court dismissed gross misdemeanor prosecutions under Minn. Stat. § 171.245 (1976) after ruling that the statute only applied to those drivers arrested for driving while intoxicated during the period of ineligibility for a new license. Similarly, in *State v. Barutt*, 312 N.W.2d 667 (Minn.1981), the trial court dismissed a gross misdemeanor prosecution under Minn. Stat.· § 169.129 (1980) after ruling that the statute did not apply to revocations for driving while intoxicated in another state. Significantly, the supreme court held in both cases that the orders dismissing the prosecutions were appealable by the State.

The rulings by the trial courts in these cases effectively prevented successful prosecutions against the defendants. The State realistically could not have approached other trial judges and requested those judges to interpret the statutes differently than had their colleagues. Thus, because the orders dismissing prosecutions in *Wicks* and in *Barutt* effectively prevented further prosecutions and made reissuing the complaints pointless, the orders were held to be appealable.[3]

In the case before us, we cannot comprehend how the State could effectively reinstate the charge of felony murder predicated on sale of cocaine in the face of the trial court's order dismissing that charge. The determination made by the trial court in this case is solely a question of law. The State has no additional evidence to gather which would bolster its prosecution on this count. Because trial judges recognize that it is not their function to overrule the legal rulings of their colleagues, it is highly improbable that the State could successfully

---

**3.** *See also State v. Mayhood,* 308 Minn. 259, 241 N.W.2d 803 (1976). In *Mayhood,* the trial court dismissed a prosecution for property damage on grounds that the common law unity rule prevented prosecution of one spouse for malicious damage to the other spouse's property. The supreme court ruled that the common law unity rule did not apply and held that the order dismissing the complaint was not appealable. However, the court recognized that the prosecution was free to bring the action again now that the unity issue was resolved.

bring the complaint to another judge. It is also undesirable to require the State to engage in "judge-shopping" in hopes of finding a judge who disagrees with his or her colleague's ruling. We therefore hold that this order is an appealable order under Minnesota Rule of Criminal Procedure 28.-04, subd. 1.

## II

■ Minn. Stat. § 609.19 (1984) reads in pertinent part as follows:

> Whoever does either of the following is guilty of murder in the second degree and may be sentenced to imprisonment for not more than 40 years:
>
> \*    \*    \*    \*    \*    \*
>
> (2) Causes the death of a human being, without intent to effect the death of any person, while committing or attempting to commit a felony offense other than criminal sexual conduct in the first or second degree with force or violence.

Although the language of this felony-murder statute appears on its face to apply to all felonies, this does not prohibit the use of common law rules to aid in statutory construction and interpretation. Minn. Stat. § 609.015, subd. 1 (1984); *State v. Cantrell,* 220 Minn. 13, 18, 18 N.W.2d 681, 684 (1945).

■ Broadly construed, the common law felony-murder rule holds that any death occurring during the commission of a felony is chargeable against the felon as murder. 4 W. Blackstone, *Commentaries on the Laws of England* 201 (1769). The common law felonies included homicide, mayhem, rape, arson, robbery, burglary, larceny, prison breach, and rescue of a felon. The basic premises underlying the rule and its various modifications have long been debated by scholars, judges, and legislators. Adlerstein, *Felony-Murder in the New Criminal Codes,* 4 Am. J. Crim. L. 249 (1975–76). Its critics have protested the absolute liability that results from labeling accidental deaths as murder, and proponents of the rule have argued that its harshness is a deterrent for the use of violence in the commission of crimes. *See id.* at 249–50.

Sir Edward Coke is generally credited with first deriving the felony murder doctrine in *Lord Dacres' Case,* 73 Eng. Rep. 458 (K.B. 1535), and in *Mansell and Herbert's Case,* 73 Eng. Rep. 279 (K.B. 1558). *See People v. Aaron,* 409 Mich. 672, 299 N.W.2d 304 (1980). Under the common law theory of constructive malice, the intent to commit murder was implied from the underlying felonious acts. The rule was strictly applied in a few subsequent cases, because practically all felonies at that time were punishable by death, but was gradually modified and limited in its application until Parliament abolished it in 1957. England's Homicide Act, 5 & 6 Eliz. 2, c. 11, § 1 (1957).

Although only Hawaii, Kentucky, and Ohio have followed England's initiative in abolishing the felony-murder rule, many legislatures and courts have attempted to limit the application of the common law doctrine in a variety of ways. *See Aaron,* 409 Mich. 672, 299 N.W.2d 304. Many states require that the underlying felony be inherently dangerous to life. *See People v. Washington,* 62 Cal.2d 777, 44 Cal. Rptr. 442, 402 P.2d 130 (1965); *People v. Pavlic,* 227 Mich. 562, 199 N.W. 373 (1924); *State v. Brantley,* 236 Kan. 379, 691 P.2d 26 (1984). Some courts have required that the felony be a common law felony (*Commonwealth v. Exler,* 171 Pa. Super Ct. 527, 89 A. 968 (1914)), or that the felony be malum in se rather than malum prohibitum (*Reddick v. Commonwealth,* 33 S.W. 416 (Ky.1895)). Other courts impose an additional requirement that the homicide be proximately caused by the felonious act. *See State v. Leopold,* 110 Conn. 55, 147 A. 118 (1929). Still other courts narrowly construe the time period during which the underlying felony is considered to have taken place. *See State v. Montgomery,* 191 Neb. 470, 215 N.W.2d 881 (1974).

The Minnesota Supreme Court has held that the purpose of the felony-murder rule is "to isolate for special treatment those felonies that involve some special danger to

human life." *In re Welfare of M.D.S.*, 345 N.W.2d 723, 729–30 (Minn.1984) (quoting *State v. Nunn*, 297 N.W.2d 752, 753 (Minn. 1980)). Shortly before a 1981 amendment to the statute,[4] the supreme court explained its rationale for limiting the application of the rule as follows:

[T]he statute treats as third-degree murder certain felonious conduct that would otherwise be treated as manslaughter, the rationale being that certain felonious conduct carries with it an especially increased risk that people may be killed as a result and that when a killing occurs as a result of this conduct it is not unfair to punish the person responsible for murder rather than just manslaughter.

*Nunn*, 297 N.W.2d at 754. The supreme court has since stated that a "typical felony-murder * * * probably is an unintentional killing that occurs in the course of robbery or some other crime against the person." *State v. Back*, 341 N.W.2d 273, 276 (Minn.1983).

It is an established rule of common law that penal statutes are to be construed strictly, with any reasonable doubt to be interpreted in favor of the defendant. *State v. Corbin*, 343 N.W.2d 874 (Minn.Ct. App.1984). It is with this principle in mind that we seek to determine whether the sole act of selling cocaine is a felony that involves some special danger to human life.

Courts in other jurisdictions have held that the act of selling heroin does not fall within the scope of a felony-murder statute. *See State v. Dixon*, 109 Ariz. 441, 511 P.2d 623 (1973) (sole act of selling heroin to a purchaser who voluntarily and out of the presence of the seller injects the quantity and dies as a result does not constitute second degree murder); *Commonwealth v. Bowden*, 456 Pa. 278, 309 A.2d 714 (1973) (element of malice necessary to support a second-degree murder conviction would not be implied from the defendant's act of injecting the decedent, a fellow drug addict, with heroin because although heroin is a dangerous drug, its reaction does not generally cause death); *Sheriff, Clark County v. Morris*, 99 Nev. 109, 659 P.2d 852 (1983) (felony-murder rule would not apply to a situation involving a sale only or a sale with a nonlethal dosage injested in the defendant's presence).

■ We conclude that the sole act of selling cocaine does not fall within the scope of the felony-murder statute, Minn. Stat. § 609.19(2). The legislature did not create the felony of sale of cocaine because of any inherent life-threatening qualities. Rather, it was created by the legislature because cocaine has a high potential for abuse and may lead to psychological dependence. *See State v. Vernon*, 283 N.W.2d 516 (Minn.1979). Thus, although cocaine is admittedly a substance with an adverse effect on a person's health, use of cocaine, even when injected, does not generally cause death. *See People v. Pinckney*, 65 Misc.2d 265, 317 N.Y.S.2d 416 (1971) (injection of heroin into the body does not generally in itself cause death). Because the sale of cocaine alone does not justify the assumption that the purchaser is incurring a substantial and unjustified risk of death, we hold that sale alone is not a proper felony upon which to predicate a charge of felony murder. To hold otherwise would give the felony-murder statute a broader scope than this court will impute in the absence of clear legislative intent to effectuate that meaning.[5]

The amended statute imposed the stiffer penalty of second-degree murder in reaction to several incidents of violent robberies of convenience stores, in which innocent customers and store employees were severely injured or killed. Report to the Senate Judiciary Committee, April 23, 1981.

4. Minn. Stat. § 609.195 (1980) read as follows:

Whoever, without intent to effect the death of any person, causes the death of another by either of the following means, is guilty of murder in the third degree and may be sentenced to imprisonment for not more than 25 years:

* * * * * *

(2) Commits or attempts to commit a felony upon or affecting the person whose death was caused or another * * *.

5. We recognize that respondent will stand trial under the indictment for felonious distribution of cocaine by injection. In *State v. Forsman*, 260 N.W.2d 160, 162 (Minn.1977), the supreme

■ Furthermore, the State has failed to show a direct causal relationship between the sale of cocaine and the subsequent death of the buyer. *See* Minn. Stat. § 609.19(2). The Kansas Supreme Court, in *State v. Mauldin*, 215 Kan. 956, 529 P.2d 124 (1974), addressed this issue in a case in which the defendant's only connection to the victim's death was the act of selling him heroin. The court concluded that because the felony of selling heroin was completed upon consummation of the sale, the resulting death did not fall within the scope of a felony murder. Similarly, in this case, once the exchange of money was complete, the collateral felony of selling cocaine had terminated. Because the death of Craig Schweiger did not occur "while committing or attempting to commit a felony offense," Minn. Stat. § 609.19(2) does not apply.

### DECISION

The order dismissing the charge of felony murder predicated on the sale of cocaine is appealable by the State. Sale of cocaine is not an appropriate felony upon which to predicate felony murder under Minn. Stat. § 609.19(2).

Affirmed.

PARKER and WOZNIAK, JJ., dissenting.

PARKER, Judge (dissenting).

In adopting an absolute rule that sale of a controlled substance cannot be an appropriate felony upon which to predicate a charge of felony murder, the majority opinion ignores the facts offered to be proved in this case, and misreads the language and intent of our felony murder statute. Accordingly, I respectfully dissent.

While no transcript of the proceedings below has been prepared, at oral argument before this court the state declared that it had made an offer of proof to the trial court that this particular sale of cocaine was made with knowledge that the deceased intended to take the drug by injection. Respondent did not disagree with this statement. In a memorandum to the trial court on the issue of the propriety of dismissing the charge based on sale, the state declared "the record is in fact very clear that the defendant * * * was well aware that the victim intended to take the cocaine by injection since he was present during that process * * *." The facts agreed upon by both parties support this statement. The State, further, briefed the point on appeal to this court.

Indeed, the trial court previously ruled "the [grand jury] testimony indicates * * * that defendant may have injected the deceased with a cocaine-water solution that proximately caused his death." If there is sufficient evidence to bring the charge of felony murder predicated on distribution of cocaine by injection within reasonable probability, then it would seem clear that there exists strong evidence that defendant sold the cocaine knowing it would be injected. Despite these facts, the majority insists that this case presents nothing more than "the sole act of selling cocaine" as a predicate felony for felony murder.

As the majority notes, the legislature amended Minn. Stat. § 609.19(2) in 1981. "The * * * amendment revised the felony murder section to apply to *all* offenses committed after May 20, 1981, except criminal sexual conduct." *In re Welfare of M.D.S.*, 345 N.W.2d 723, 729 (Minn.1984) (emphasis in original). The majority be-

---

court held that the distribution of heroin by direct injection into the body of another was a felony "upon or affecting the person whose death was caused" and was punishable under the earlier felony-murder rule. (*See supra* n.4). The court did not reach the issue of whether direct injection of heroin by the defendant into the deceased at the deceased's request was an inherently dangerous felony because the statutory language applied directly to the act for

which defendant was convicted. In a footnote, however, the State admitted that "distribution by other means, absent the tactile quality found present here, would present a different issue." *Id.* at 164, n.7. This is precisely the issue here, suggesting that this court should hesitate before finding an inherent danger to human life from the sale or gift of a controlled substance that does not encompass the tactile qualities of a direct injection.

lieves the statute was "amended in reaction to several incidents of violent robberies of convenience stores, in which innocent customers and store employees were * * * killed." The old statute, of course, applied when the underlying felony was aggravated assault. *Kochevar v. State*, 281 N.W.2d 680 (Minn.1979) (felonious discharge of gun appropriate felony to predicate felony murder); *State v. Rogers*, 347 N.W.2d 551 (Minn.Ct.App.1984) (pointing a gun at another held to be felonious assault); *State v. Brown*, 348 N.W.2d 743 (Minn.1984) (shooting death of a clerk during an attempted convenience store robbery in 1980. Convicted of third-degree felony murder under prior statute.) It is logical to conclude that the amendment was passed simply to foreclose the argument that burglary is not a proper predicate felony or to end the distinction in felony murder cases between "property offenses" and offenses against the person. *See State v. Nunn*, 297 N.W.2d 752 (Minn. 1980). The majority quotes *State v. Back*, 341 N.W.2d 273 (Minn.1983), as stating that a "typical felony-murder * * * probably is an unintentional killing that occurs in the course of robbery or some other crime against the person." This is an inaccurate quotation.[1] The amendment should be viewed as extending the applicability of the statute beyond those felonies which were committed "upon or affecting the person whose death was caused," since that restricting language was deleted.

The majority holds that even though the present felony murder statute unambig-uously applies to all felony offenses, there still exists a requirement that, in order to be an appropriate predicate offense, a felony must "involve some special danger to human life." *Nunn*, 297 N.W.2d at 753. It is not at all certain that this requirement exists under the present statute.[2]

The majority determines that no sale of cocaine could ever involve special danger to human life asserting, without any evidence whatsoever, that "use of cocaine, even when injected, does not generally cause death." As authority for its position, the majority cites a case which is inapposite,[3] a case the holding of which is directly contrary to Minnesota law[4] and *Sheriff, Clark County v. Morris*, 99 Nev. 109, 659 P.2d 852 (1983), a case where the actual holding is that felonious sale of chloral hydrate with presence of seller during the consumption by buyer of a lethal dose is a proper predicate for felony murder. The majorities' assertions and its proffered authority are less than persuasive.

Minnesota law already considers some sales of cocaine to be felonies involving "special danger to human life." In *State v. Vernon*, 283 N.W.2d 516 (Minn.1979), the Minnesota Supreme Court upheld the classification of cocaine as a Schedule II controlled substance. In reaching its conclusion, the supreme court examined evidence relevant to the physiological effect of cocaine and found that cocaine "can be fatal when taken with narcotics, or *injected into the blood*, or ingested orally in large quantities." *Vernon* at 518 (emphasis added).

---

1. The full passage of *Back* reads as follows:
   If there is such a thing as a typical felony-murder, it probably is an unintentional killing that occurs in the course of robbery or some other crime against the person. However, as we made clear in *State v. Nunn*, 297 N.W.2d 752 (Minn.1980), the felony-murder rule can be used even when the underlying felony is a property offense if that offense, as committed, involves special danger to human life.
   *Back*, 341 N.W.2d at 276–77. (underscored language omitted from majority quote).

2. *M.D.S.*, decided under the new statute and relied on by the court, simply notes that shooting a gun into a dwelling involves special danger to human life, and such a situation was

clearly covered even under the old statute's rationale. *In re Welfare of M.D.S.*, 345 N.W.2d at 730. Therefore, *M.D.S.* did not present a case where the court was required to examine the applicability of the new statute to a felony not involving special danger to human life.

3. In *State v. Dixon*, 109 Ariz. 441, 511 P.2d 623 (1973), the purchaser of the heroin injected the drug *out of the presence* of the seller.

4. *Commonwealth v. Bowden*, 456 Pa. 278, 309 A.2d 714 (1973) conflicts with the holding of *State v. Forsman*, 260 N.W.2d 160 (Minn.1977) where distribution of heroin by injection was determined to be appropriate predicate felony.

Further, "[t]he statutory testing of cocaine in Schedule II carries, by implication, legislative findings that it has a high potential for abuse * * * " *id* at 518. It is suggested that the statutory listing of cocaine in Schedule II also carries, by implication, legislative findings that the sale of cocaine presents a great "risk to public health" inasmuch as the Board of Pharmacy is required to consider that factor in classifying controlled substances under Minn. Stat. § 152.02, subd. 8 (1984).

In addition, the penalties imposed for selling cocaine are severe, including imprisonment for not more than 15 years and/or a fine of not more than $40,000 for a first violation, and for a subsequent violation, imprisonment for not less than 1 year nor more than 30 years and/or a fine of not more than $50,000. Minn. Stat. § 152.15, subd. 1 (1984).

The Supreme Court of Virginia recently held that unlawful distribution of cocaine with knowledge that the drug was to be injected constituted an appropriate predicate felony upon which to base a charge of felony murder. *Heacock v. Commonwealth*, 228 Va. 397, 323 S.E.2d 90 (1984). *See also Sheriff of Clark County v. Morris*, 99 Nev. 109, 659 P.2d 852 (1983) (felonious sale of drugs and presence during consumption of lethal dose appropriate predicate felony). If the majority wishes to hold that sale of cocaine cannot ever be an appropriate predicate felony, it should address *State v. Randolph*, 676 S.W.2d 943 (Tenn.1984) (sale of heroin with no participation or presence during injection constituted malice for first degree murder charge) and *People v. Taylor*, 11 Cal. App.3d 57, 89 Cal.Rptr. 697 (1970) (furnishing heroin with no participation or presence during injection appropriate predicate felony).

In *State v. Nunn*, 297 N.W.2d 752, the supreme court stated that the phrase "upon or affecting the person whose death

was caused" in the old statute had the purpose of "isolat[ing] for special treatment those felonies that involve some special danger to human life." *Id.* at 753. The court then noted:

There are two basic approaches that could be taken in determining what felonies [involve some special danger to human life]. One would be to determine from the elements of each felony in the abstract whether it inherently involved some special danger to human life. The other approach would be to consider not just the elements of the felony in the abstract but the facts of the particular case and the circumstances under which the felony was committed to determine whether the felony-murder rule should be applied. W. LaFave & A. Scott, *Handbook on Criminal Law*, 547 (1972).

The latter approach is preferable and is the one that we have implicitly followed in our cases.

*Id.* at 754.

The majority has fallen into the trap of "determin[ing] from the elements of each felony *in the abstract* whether it inherently involved some special danger to human life," instead of examining the facts of the particular case and the circumstances under which the felony was committed. The facts of this particular case and the circumstances under which this sale was committed compel the conclusion that this sale, where there was knowledge that the cocaine was to be taken by injection, involved special danger to human life. This sale of cocaine, therefore, should be held to be a proper predicate felony to prosecute a charge under Minn. Stat. § 609.19(2).

Finally, the majority misreads the felony murder statute and holds that if a felony "terminates" before the death of the victim the offense cannot be a predicate felony. No Minnesota decision is cited for this proposition.[5] Our felony murder statute requires the actor only to *cause* the death

---

5. The majority cites *State v. Mauldin*, 215 Kan. 956, 529 P.2d 124 (1974) in support of its position. However, the statute at issue in *Mauldin* was for *first*-degree felony murder and required

"*killing* committed in the perpetration or attempt to perpetrate any felony" K.S.A. 1973 Supp. 21–3401 (emphasis added). Our statute reads differently.

while committing the crime, not that the death has to occur while the actor is committing the offense.[6] *See M.D.S.*, 345 N.W.2d 723 (victim died in hospital after actor feloniously aided in discharge of gun at victim's residence). Even the old felony murder statute demanded only that "the felony and the killing [be] parts of one continuous transaction." *Kochevar v. State*, 281 N.W.2d at 686. Nothing in the 1981 amendment changed this rule.

Here, the predicate felony offered to be proved was sale of cocaine with the defendant allegedly knowing that the drug was to be taken in a potentially fatal manner, i.e. by injection. The injection took place in respondent's presence, presumably within a few minutes of the sale. The sale and the injection, therefore, are part of one continuous transaction, and if it can be shown that Schweiger died as a result of the cocaine injection, there would exist a strong causal connection between the felonious act and the death. Our statute requires no more. *See also Heacock* 228 Va. at 401, 323 S.E.2d at 92.

The majority opinion precludes any "completed" felonious sale of any controlled substance under any circumstances from being a proper predicate felony upon which to base a charge of felony murder under § 609.19(2). The issue is more appropriately addressed on a case-by-case basis, examining the facts and circumstances underlying each particular sale.

WOZNIAK, Judge (dissenting).

I join in the dissent of Judge Parker.

---

6. The statute reads:

    *Causes* the death of a human being, without intent to effect the death of any person, while committing or attempting to commit a felony offense other than criminal sexual conduct in the first or second degree with force or violence.

Minn. Stat. § 609.19(2) (1984) (emphasis added).