STATE of Minnesota, Respondent,

v.

Debra Dee CARITHERS, Petitioner,
Appellant,

Clark Gaylord Gladwin, Petitioner,
Appellant.

No. C9–91–2423.

Supreme Court of Minnesota.

Oct. 16, 1992.

William R. Kennedy, Hennepin County
Public Defender, Renee J. Bergeron, Barbara A. Kehrberg, Assistant Public Defenders, Minneapolis, for Debra Dee Carithers.

Robert G. Davis, Minneapolis, for Clark
Gaylord Gladwin.

Hubert H. Humphrey, III, Atty. Gen., St.
Paul, and Michael O. Freeman, Hennepin
County Atty., Lisa A. Berg, Asst. County
Atty., Minneapolis, for respondent.

COYNE, Justice.

We granted review in this case to address a question certified to the court of
appeals as important and doubtful:

> When a married couple jointly acquires
> a Schedule I controlled substance, and
> one of the partners uses that substance
> and subsequently dies from a drug overdose, did the legislature intend that the
> surviving partner be subject to prosecution under Minn.Stat. § 609.195(b)?

Minnesota Statute § 609.195(b) (1990) is a
special felony murder statute declaring it
murder in the third degree if one, without
intent to kill, proximately causes the death
of another person by furnishing—that is,
"directly or indirectly, unlawfully selling,
giving away, bartering, delivering, exchanging, distributing, or administering"—
a schedule I or II controlled substance.
Reversing the order of the district court,
which granted defendants' motions to dismiss, the court of appeals answered "yes"
to the certified question, concluding that
the statute plainly applies to the conduct
described in the certified question. *State*

*v. Carithers,* 484 N.W.2d 435 (Minn.App. 1992). Answering the certified question in the negative, we reverse the decision of the court of appeals.

The facts are basically undisputed:

(a) A friend gave defendant Gladwin and his wife a ride to the place of purchase. Gladwin bought two "papers" of heroin, while his wife and the friend waited in the car. They took the heroin to the Gladwin home. Gladwin prepared the syringes, keeping one for himself and giving one to his wife. Gladwin "shot up" himself, and his wife "shot up" at the same time. She passed out and died of a drug overdose.

(b) Defendant Carithers went by herself to buy the heroin,. but it appears undisputed that she was buying not just for herself but for her husband also. She brought the heroin home and used her half. After showing her husband where she hid the heroin, she left the house. During her absence, her husband prepared a syringe and injected himself. He too died of an overdose.

Neither of the parties who sold the heroin to the Gladwins and the Carithers respectively nor the friend who drove the Gladwins to the place of purchase has been charged with a crime as a result of the deaths.

In *State v. Forsman,* 260 N.W.2d 160, 164 (Minn.1977), this court ruled that a felony murder conviction under the general felony murder statute as it was then worded (it has since been changed slightly) may be predicated on distribution of heroin by direct injection by the defendant, since such a felony clearly is one "upon or affecting the person whose death was caused," Minn.Stat. § 609.195(2) (1978).[1] This court said in *Forsman* that "distribution by other means, absent the 'tactile quality' present here, would present a different issue." 260 N.W.2d at 164 n. 7.

In 1981 the legislature amended the general felony murder statute, now codified as section 609.19(2), to make it second-degree murder if a defendant without intent to kill

anyone caused the death of a person "while committing or attempting to commit a felony offense." In other words, the legislature omitted the requirement that the underlying felony be "upon or affecting the person whose death was caused or another."

Subsequently, a man named Dean Aarsvold was charged under the amended general felony murder statute with two counts of felony murder, one predicated on "distribution of a controlled substance by injection" and the other predicated on "sale of a controlled substance." The trial court dismissed the second count, and the state filed a pre-trial appeal. The court of appeals, in a 5–2 decision, affirmed the dismissal. The majority opinion concluded that the crime of the sale of cocaine is not one that involves some special danger to human life because "use of cocaine, even when injected, does not generally cause death." *State v. Aarsvold,* 376 N.W.2d 518, 522 (Minn. App.1985), *pet. for rev. denied* (Minn.1985). A majority also concluded that the state would not be able to establish that death occurred "while committing or attempting to commit a felony offense," Minn.Stat. § 609.19(2), because the offense of selling cocaine is complete once the cocaine has been delivered and the money paid. 376 N.W.2d at 523. This court denied the petition for review and therefore did not address the issue(s) raised in *Aarsvold.*

■ Subsequent to and in response to the court of appeals' decision in *Aarsvold,* the legislature created a specific crime for felony murders resulting from the sale of drugs. The law that resulted, Minn.Stat. § 609.195(b), is the law we are concerned with in this case:

Whoever, without intent to cause death, proximately causes the death of a human being by, directly or indirectly, unlawfully selling, giving away, bartering, delivering, exchanging, distributing, or administering a controlled substance classified in schedule I or II, is guilty of

1. The statute then made it third-degree felony murder to unintentionally cause the death of another by committing or attempting to commit

a felony "upon or affecting the person whose death was caused or another."

murder in the third degree and may be sentenced to imprisonment for not more than 25 years or to payment of a fine of not more than $40,000 or both.

The statute is a specific felony murder statute which specifies a particular predicate felony, namely, the unlawful transfer of schedule I or II controlled substances. At the time section 609.195 was enacted, it was unlawful for any person to "[m]anufacture, sell, give away, barter, deliver, exchange or distribute; or possess with intent to manufacture, sell, give away, barter, deliver, exchange or distribute, a controlled substance." Minn.Stat. § 152.09, subd. 1(1) (1986). All of these unlawful acts are applicable to transfers of controlled substances in the commercial distribution chain. The inclusion of "give away" in the list was undoubtedly designed (a) to cover the practice of giving youngsters or other potential customers drugs in order to encourage subsequent purchase and (b) to prevent defendants charged with an unlawful sale from denying that the transaction constituted a sale because they did not receive any money for the drug in question.

Minnesota Statute § 609.195(b), enacted in 1987, simply incorporated the list of unlawful acts, with the exception of "manufacture" and the addition of "administering", set out at section 152.09, subd. 1(1). Certainly, the legislative enactment of section 609.195(b) was directed at the control of the commercial distribution of controlled substances. When chapter 152, which is entitled Controlled Substances, was revised in 1990, section 152.09 was repealed and, in its place, the legislature adopted a statutory definition of "sell" which expressly incorporates each of the various alternative predicate acts specified in section 609.-195(b) (except "administering"):

"Sell" means "to sell, give away, barter, deliver, exchange, distribute or dispose of to another; or to offer or agree to do the same; or to manufacture." Minn. Stat. § 152.01, subd. 15(a) (1990).

Had section 152.01, subdivision 15(a) existed when section 609.195(b) was adopted, the predicate felony could have been fully defined by the words "unlawfully selling or administering a controlled substance" but in 1987, in the absence of a statutory definition of "sell", it was necessary to specify with particularity each of the acts which are included in the term "sell".

Limiting ourselves in this case, as we believe we must, to the certified question, we must assume that the defendants could not be convicted of "selling" the drugs in question. It therefore follows, we believe, that neither defendant can be convicted of felony murder under the statute.

█ If a husband and wife jointly acquire the drug, each spouse has constructive possession from the moment of acquisition, whether or not both are physically present at the transaction. The absent spouse could be charged with constructive possession at any time following the purchase by his or her confederate. That the absent spouse did not exercise physical control over the substance at the moment of acquisition is an irrelevancy when there is no question that the absent spouse was then *entitled* to exercise joint physical possession.

In each of the instant cases the deceased spouse jointly acquired the heroin with the surviving spouse and was immediately entitled to exercise joint physical dominion and control or actual physical possession over those drugs at all times following the completion of the sale. If a defendant charged with felony murder under section 609.-195(b) could not be convicted of "selling" the drug in question—as "sell" is defined in section 152.01, subdivision 15(a)—then the defendant cannot be convicted of felony murder under the statute. In each of the two cases the spouses jointly acquired the drug in question and neither could be convicted of selling the drug to the other.

The leading case supporting us in this analysis is *United States v. Swiderski*, 548 F.2d 445 (2d. Cir.1977). The federal statute there construed made it unlawful to possess with intent to distribute or deliver or transfer a controlled substance, and the question was whether a statutory delivery or transfer may occur between two individuals in joint possession of a controlled substance simultaneously acquired for their

own use. In holding that a "transfer" may not occur in these circumstances, the court said:

Congress' reasoning in providing more severe penalties for commercial trafficking in and distribution of narcotics was that such conduct tends to have the dangerous, unwanted effect of drawing additional participants into the web of drug abuse. For this reason the House Report equated "transactions involving others" and "distribution to others" with the harsher penalties provided by [the Act]. Where only individual possession and use is concerned, on the other hand, the Act prescribes lesser penalties and emphasizes rehabilitation of the drug abuser. Similarly, where two individuals simultaneously and jointly acquire possession of a drug for their own use, intending only to share it together, their only crime is personal drug abuse—simple joint possession, without any intent to distribute the drug further. Since both acquire possession from the outset and neither intends to distribute the drug to a third person, neither serves as a link in the chain of distribution. For purposes of the Act they must therefore be treated as possessors for personal use rather than for further distribution. Their simple joint possession does not pose any of the evils which Congress sought to deter and punish through the more severe penalties provided for those engaged in a "continuing criminal enterprise" or in drug distribution.

Of course, joint possession of a drug does not preclude a finding of possession with intent to distribute to a third person in violation of [the Act]. Whether such an inference may be drawn depends upon the surrounding circumstances, including the nature of the relationship (whether it is commercial rather than personal), the quantity of the drug (whether it is too large for personal use only), the number of people involved, and statements or conduct on the part of the defendants. *See United States v. Hutchinson*, 488 F.2d 484 (8th Cir.), *cert. denied*, 417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed.2d 219 (1974) (large quantity of drug held jointly by husband and wife supplied inference of intent to distribute to others). But the mere existence of joint possession by two closely related persons—here an engaged couple who later married one another—is alone not enough to provide the basis for such an inference. Whatever else may be embraced within the term "transfer," a term that is not defined in the Act, we are persuaded that it was not intended to include the exchange of physical possession between two persons who jointly acquired and hold the drug for their own use.

548 F.2d at 450.

In a typical prosecution under section 609.195(b) on facts similar to those in this case, the state may be able to obtain a conviction by proving that the heroin was not jointly acquired, that is, that the defendant acquired the heroin individually, then "sold" it to the deceased. But in the instant case we must assume, given the phrasing of the certified question and the apparently undisputed facts, that each of the defendants acquired the heroin jointly with his or her spouse. Under the reasoning of *Swiderski*, neither defendant can be convicted of the predicate felony of furnishing or transferring or delivering heroin to a spouse who already has constructive possession and therefore cannot be convicted of felony murder under section 609.-195(b).

There may well be other difficult issues that will arise in connection with section 609.195(b). The issue in this case is a very limited one. It appears that one of the supporters of the statute said at the committee meeting hearing on the bill that the bill should receive considerable publicity because its effect would be to subject a recreational drug user to possible liability for felony murder if he or she "shared" drugs with a friend and the friend died as a result. Hearing on H.F. 350, Subcomm. on Crime and Fam. Law of H. Jud. Comm., 75th Minn.Leg., March 31, 1987 (audio tape) (remarks of Representative Pappas). Even if this is so under the statute, something

that we do not decide, we are not dealing with a case of "sharing" of one's individually acquired drugs with another person. Rather, we are dealing with joint acquisition and possession of drugs under circumstances where neither defendant's conduct can be fairly characterized as involving a sale or transfer or delivery to the person who died.

Reversed; certified question answered.